IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 24, 1999

**FREDRICK B. ZONGE v. THOMAS T. WOODALL**

**Appeal from the Circuit Court for Davidson County**
**No. 96C-2269     Thomas W. Brothers, Judge**

_____

**No. M1998-00800-COA-R3-CV - Filed October 5, 2000**

_____

Appellant, a *pro se* prisoner, brought this legal malpractice action against the appointed appellate counsel in his criminal case. Appellant argued that his conviction would have been reversed but for Appellee's failure to assert in his criminal appeal that the trial court committed reversible error by forcing Appellant to attend trial in prison garb. That argument was made in a supplemental brief filed by Appellant's new appellate counsel and was rejected by the Court of Criminal Appeals. The trial court in this malpractice action granted Appellee's motion for summary judgment. We affirm because Appellant has failed to establish a breach of the standard of care or that he was damaged by counsel's decision not to make an argument which was, in fact, made by new counsel and was unsuccessful.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and WILLIAM C. KOCH, JR. J., joined.

Fredrick B. Zonge,  Pro Se, Appellant.

Winston S. Evans, Samuel D. Payne, Nashville, Tennessee, for the Appellee, Thomas T. Woodall.

**OPINION**

On June 17, 1996, Fredrick Zonge, a *pro se* prisoner, brought this action against the appellate counsel in his criminal case, Thomas T. Woodall. Mr. Zonge's complaint asserted that his conviction would have been reversed but for counsel's failure to argue on appeal that the trial court committed reversible error by forcing Mr. Zonge to attend trial in his prison uniform. Mr. Woodall successfully moved for summary judgment. We affirm.

After a jury trial, Mr. Zonge was convicted of especially aggravated kidnapping, especially aggravated burglary, aggravated assault, and theft of property valued at over $1,000. *See State v.*

*Zonge*, 973 S.W.2d 250, 252 (Tenn. Crim. App. 1997). The evidence at trial showed that Mr. Zonge was in the process of burglarizing his former employer's home when he was discovered by the former employer's roommate. Mr. Zonge used a weapon to confine the roommate and ultimately beat her with it when she attempted to resist him with a shotgun. The former employer returned home in time to apprehend the fleeing Mr. Zonge, who was arrested and taken into custody. All of the property taken was recovered. After waiving his *Miranda* rights, Mr. Zonge confessed to breaking into the residence to get some things to sell for cash. *See id.* at 253. He also admitted that a struggle ensued when he saw the roommate with the shotgun.

At trial, Mr. Zonge represented himself. *See id.* at 257. Although Mr. Zonge's original trial date was Friday, February 18, 1994, his trial was delayed because another case on the docket took longer than expected. Pursuant to court policy, Mr. Zonge's case was rotated forward to the next available day, Tuesday, February 22.[1]

After making several preliminary motions, including a motion for continuance, Mr. Zonge informed the court that he had not been given the opportunity to change from his prison uniform to civilian garb. *See id.* at 256. According to the Court of Criminal Appeals,

> [Mr. Zonge] explained that his trial was originally scheduled to be held four days earlier and said that he had made arrangements for his brother to meet him with his clothes on that date. The defendant complained that he was not notified that his case had been continued. He said that he did not have any other clothes at the prison because the prison only allows inmates to keep articles for thirty days. He said that his brother would have had to travel around 250 miles to deliver him clothes and explained that his brother could not visit him at prison because he was not on the visitation list. He said that he did not put any family members on his visitation list because he did not want them to see him there.

*Id.*

The trial court in Mr. Zonge's criminal case responded that there had been no way to notify the defendant of his new court date and that it had assumed that if the defendant was prepared to go to trial on the original trial date that he would also be prepared four days later. *See id.* The trial then commenced, and the jury returned a guilty verdict on each count. Mr. Zonge was sentenced as a Range II multiple offender to thirty-five years, fifteen years, eight years, and five years, respectively, to be served concurrently to one another but consecutively to a prior unserved sentence. Mr. Zonge was also fined $25,000 for the especially aggravated kidnapping, $15,000 for the especially aggravated burglary, $5,000 for the aggravated assault, and $2,500 for the theft over $1,000.

---

[1]Because Monday, February 21, was President's Day, a state holiday, the trial was scheduled for the next day.

Mr. Woodall, a contract appellate defender with the Tennessee District Public Defenders Conference, was assigned to represent Mr. Zonge in his criminal appeal. Mr. Zonge wanted Mr. Woodall to argue on appeal that the trial court violated due process by requiring Mr. Zonge to attend trial in his prison garb. Mr. Woodall declined to assert that argument in the appellate brief he filed. *See id.* at 252 n. 1. Mr. Woodall reasoned that:

> it was my opinion asserting the "prison garb" defense as error on appeal would be unwise. It seemed to me that this defense was weak because Mr. Zonge apparently had had ample opportunity and notice to have his civilian clothes available at the time of this trial. I was afraid that asserting this defense would detract from and weaken the other arguments which I chose to assert on appeal . . . In my opinion, my decision not to assert the "prison garb" defense was a wise decision. It was a matter of litigation strategy and was not improper or negligent in any way.

This disagreement is the primary basis for the legal malpractice action presently before this court. Mr. Zonge filed the underlying action in the circuit court of Davidson County on June 17, 1997, seeking $500,000 in damages. Mr. Zonge alleged that Mr. Woodall:

> ignored the only issue that would have given the Plaintiff a new and fair trial. . . . This has caused the Plaintiff to suffer great mental distress by subjecting him to serve a thirty-five (35) year sentence that was obtained through a trial that can by no means be considered fair. . . . The issue that was not presented by the Defendant is: "The defendant was forced to proceed as pro se counsel while clothed in prison garb over objection."

Mr. Woodall was permitted to withdraw as counsel for Mr. Zonge in his criminal appeal six months after the underlying malpractice action was filed. Mr. Zonge then was represented by another attorney, who filed a supplemental brief in which he asserted the "prison garb" defense as error on appeal. *See id.*

After the underlying action commenced, Mr. Woodall filed a motion for stay and for extension of time. He sought a stay until the Tennessee Court of Criminal Appeals ruled on Mr. Zonge's criminal appeal, arguing that if the appeal was successful, the malpractice claim would become moot.

On October 9, 1997, the Court of Criminal Appeals issued its opinion on Mr. Zonge's criminal appeal. It specifically considered and rejected Mr. Zonge's "prison garb" defense. *See id.* at 257. The court affirmed the conviction on all counts except that of especially aggravated burglary, which was reduced to aggravated burglary on sufficiency of evidence grounds, and the sentence on that count was modified.[2]

---

[2]The sufficiency of the evidence issue was asserted in the original brief.

Mr. Zonge later raised the "prison garb" defense in a petition for habeas corpus, but the petition was rejected on procedural grounds. *See Zonge v. State*, No. 03C01-9903-CR-00094, 1999 WL 1191542 at *2 (Tenn. Crim. App. Dec. 16, 1999) (perm app. denied June 26, 2000).

In addition, Mr. Zonge filed an action in the United States District Court for the Middle District of Tennessee alleging that Mr. Woodall "botched his appeal and denied him the effective assistance of counsel."[3] That action was dismissed as frivolous on a finding that the absence of evidence that Mr. Zonge's criminal conviction had been reversed precluded his argument.

After the Court of Criminal Appeals issued its opinion in the criminal case, Mr. Woodall moved for summary judgment in the malpractice case, arguing, *inter alia*, that a prerequisite for a legal malpractice action by a criminal defendant against criminal defense counsel is proof of innocence, which Mr. Zonge could not provide. In addition, Mr. Woodall argued that the decision not to assert the "prison garb" defense was a matter of litigation strategy, for which attorneys cannot be held liable. The trial court summarily granted Mr. Woodall's motion on December 4, 1998, and this appeal ensued.

I.

Because Mr. Zonge is challenging the entry of summary judgment, which involved only questions of law, we review the decision of the trial court *de novo* with no presumption of correctness on appeal. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). We must consider the proof in the record in the light most favorable to the party opposing the motion. *See Berry v. Whitworth*, 576 S.W.2d 351, 352-53 (Tenn. Ct. App. 1978). If, upon review, a genuine issue exists or if there is doubt as to whether such issue exists, the summary judgment is improper and should be reversed. *See Evco Corp. v. Ross,* 528 S.W.2d 20, 24-25 (Tenn. 1975). However, if both the facts and the conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion, summary judgment should be granted. *See Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997); *Bain*, 936 S.W.2d at 622.

In granting Mr. Woodall's motion for summary judgment, the trial court did not indicate the grounds upon which it based its decision. In the motion itself, a number of grounds are asserted: Mr. Woodall did not fail to adhere to the standard of care; Mr. Woodall's decision not to assert the "prison garb" defense was a matter of litigation strategy, and lawyers cannot be held liable for decisions of litigation strategy; Mr. Zonge never offered any expert testimony to establish that Mr. Woodall failed to adhere to the applicable standard of care; the Tennessee Court of Criminal Appeals considered and rejected the "prison garb" defense, as well as each of the other defenses which Mr. Zonge wished to assert, and the Supreme Court of Tennessee then denied Mr. Zonge's application for permission to appeal; and a criminal defendant must establish his innocence as a prerequisite to a lawsuit for professional negligence against the attorney who represented him in the criminal proceedings, and Mr. Zonge's conviction has been affirmed on appeal.

---

[3]The complaint did not mention the "prison garb" issue raised in the proceedings below.

Mr. Woodall asserts that summary judgment can be sustained based on any one of these reasons. On the record before us, we agree that more than one basis exists for the grant of summary judgment because Mr. Zonge has failed to establish two of the elements necessary to a successful claim of legal malpractice.

In Tennessee, the elements of a cause of action for legal malpractice are: (1) duty owed by the attorney(s) to plaintiff; (2) breach of that duty; and (3) damages resulting from the breach. *See Lazy Seven Coal Sales v. Stone & Hinds*, *P.C.*, 813 S.W.2d 400, 403 (Tenn.1991); *see also Sammons v. Rotroff*, 653 S.W.2d 740, 745 (Tenn.Ct.App.1983), *cert. denied,* 464 U.S. 860, 104 S.Ct. 186, 78 L.Ed.2d 165 (1983). Mr. Zonge bore the burden of proving all the essential elements of legal malpractice. *See Horton v. Hughes,* 971 S.W.2d 957, 959 (Tenn. Ct. App. 1998).

> The plaintiff in a malpractice case must prove that the attorney's conduct fell below that degree of care, skill, and diligence which is commonly possessed and exercised by attorneys practicing in the same jurisdiction. In addition, the plaintiff must demonstrate a nexus between the negligence and the injury. (citations omitted.)

*Sanjines v. Associates, P.C.*, 984 S.W.2d 907, 910 (Tenn. 1998).

## A. Breach of Standard of Care

As stated above, a plaintiff in a malpractice action must demonstrate that the attorney failed to exercise the degree of care, skill, and diligence commonly possessed and exercised by other attorneys practicing in the same jurisdiction. Except for obvious, common sense mistakes, establishing the applicable standard of care and determining whether a lawyer breached that standard require expert evidence. *See Horton*, 971 S.W. 2d at 959.

> We have determined that the evidentiary principles developed in medical malpractice cases are equally applicable to legal malpractice cases. The lawyer's standard of care, except in the most extreme cases, should be proved using expert testimony. Likewise, whether the lawyer's conduct in a given case departed from the applicable standard should also be proved by expert testimony.

*Cleckner v. Dale*, 719 S.W.2d 535, 540 (Tenn. Ct. App. 1986). The Supreme Court adopted the reasoning and conclusion of *Cleckner* in *Lazy Seven Coal Sales*, *P.C.*, 813 S.W.2d at 403. Further, "[t]he varied nature of the practice of law underscores the necessity of expert proof intended to acquaint the finder of fact with the applicable professional standard in each case." *Lazy Seven Coal Sales*, 813 S.W.2d at 406 (quoting *Cleckner*, 719 S.W.2d at 540, n. 4). "[W]hether a lawyer's conduct meets the applicable standards is generally believed to be beyond the common knowledge of laypersons." *Cleckner*, 719 S.W.2d at 540.

In response to Mr. Zonge's claim that the failure to raise the "prison garb" issue in his appellate brief constituted malpractice, Mr. Woodall filed an affidavit stating that it was his opinion,

based on his extensive experience in criminal trial and appellate practice in the area, which was detailed in the affidavit, that he had demonstrated "the competence and diligence normally exercised by other lawyers in similar circumstances." The affidavit explained Mr. Woodall's conscious decision not to raise the "prison garb" defense after he reviewed the transcript of the hearing on Mr. Zonge's motion for new trial wherein he raised that issue. Mr. Woodall considered this defense weak, based on that transcript, and thought its inclusion in the brief would distract from or weaken the other arguments made in the brief.

Mr. Woodall's affidavit in support of his summary judgment motion was sufficient to shift the burden of going forward to Mr. Zonge. He was required to demonstrate that he would effectively rebut the expert conclusions of Mr. Woodall either by presenting expert witnesses of his own or by demonstrating that Mr. Woodall's failure to include the "prison garb" issue in his appellate brief was so plainly negligent that expert evidence was not required. *See Horton*, 972 S.W.2d at 960. In response to the motion and affidavit, Mr. Zonge stated that he was not required to offer any expert testimony to rebut the affidavit because the negligence was palpable.

Thus, Mr. Zonge did not offer any expert evidence, and that failure eliminated any issue of fact regarding the alleged breach of the duty of care. We do not agree that Mr. Woodall's decision not to raise the "prison garb" issue is the kind of common sense, obvious, or extreme mistake that eliminates the necessity of expert testimony to establish breach of the standard of care. It is not, as Mr. Zonge characterizes it, palpable negligence. Rather, it was a conscious choice, an exercise of professional judgment, based upon review of the facts and experience in and knowledge of the law.

> At one time we thought that a lawyer's trial conduct or tactics could not be questioned, *see Stricklan v. Koella,* 546 S.W.2d 810 (Tenn. App. 1976), but a more flexible approach was announced by the federal court in *Woodruff v. Tomlin*, 616 F.2d 924 (6th Cir. 1980). The federal court, interpreting Tennessee law, recognized that there can be no liability for acts or omissions by an attorney in the conduct of litigation which are based on an honest exercise of professional judgment, but the court also said that an attorney is still bound to exercise a reasonable degree of skill and care. *Cf. Pera v. Kroger Co.*, 674 S.W.2d 715 (Tenn. 1984).

*Allen v. Wiseman*, No. 01A01-9710-CV-00565, 1998 WL 391803 at * 2 (Tenn. Ct. App. 1998) (no Tenn. R. App. P. 11 application filed).

Mr. Zonge has relied upon the *Woodruff* case in arguing against Mr. Woodall's assertions that he cannot be liable for litigation strategy. Closer examination of the *Woodruff* opinion is, therefore, warranted. The *Woodruff* court noted that in *Stricklan* the court found that no Tennessee cases had recognized a cause of action for alleged negligence in the attorney's choice of trial tactics or conduct of the case. *See Woodruff*, 616 F.2d at 930. In a footnote, the *Woodruff* court also noted that neither it nor counsel had found any American decision holding an attorney liable for the choice of trial tactics or the good faith exercise of professional judgment. *See Woodruff*, 616 F.2d at 930 n. 1. The court stated:

-6-

When reviewed in light of the general Tennessee rule which holds attorneys liable for losses to clients for failure to exercise reasonable skill and care, *Stricklan* can only mean that there can be no liability for acts and omissions by an attorney in the conduct of litigation which are based on an honest exercise of professional judgment. This is a sound rule. Otherwise, every losing litigant would be able to sue his attorney if he could find another attorney who was willing to second guess the decisions of the first attorney with the advantage of hindsight. If this were permitted, as Judge Brown pointed out in the present case, the original trial would become a "play within a play" at the malpractice trial. To hold that an attorney may not be held liable for the choice of trial tactics and the conduct of a case based on professional judgment is not to say, however, that an attorney may not be held liable for any of his actions in relation to a trial. He is still bound to exercise a reasonable degree of skill and care in all his professional undertakings.

*Id*. at 930.

In applying that holding in *Woodruff*, the court found that the decision of whether to present expert testimony was "one of trial tactics or judgment as to the most effective presentation of a client's case" and that, in the absence of bad faith, the failure to consult an expert cannot be the basis of liability. *Id*. at 932. Similarly, the attorney's decision not to cross-examine a particular witness but instead to rely on direct proof by his own witnesses was "clearly a tactical decision . . . which would furnish no basis for a malpractice claim under *Stricklan*." *Id*. at 932-33. In the issue most directly on point, the court considered the attorney's decision to make certain concessions on appeal, because of his opinion that no ground existed for reversing the jury's findings regarding one issue, in favor of salvaging the other arguments. The court held, "We conclude that the concessions in the appellate brief resulted from a tactical decision reached in the exercise of professional judgment and do not furnish a basis for a malpractice action." *Id*. at 933. In analyzing one issue, the court clarified those acts which are tactical decisions:

While the determination of whether to call a particular person as a witness at trial is a tactical decision involving the exercise of professional judgment, the same cannot be said concerning the failure to interview a potential witness brought to the attention of an attorney by his client. . . . [W]ithout interviewing them [the attorney] had no basis for determining what they would testify to, if called, or for making a judgment as to their effectiveness as witnesses. Failure to follow leads furnished by the client which, if fruitful, would supply significant support for the client's case is not the same as refusing "to use the trial tactics insisted upon by the client."[4]

*Id*. at 934.

---

[4]The court distinguished the actions of the attorney in *Stricklan*, who took depositions of witnesses as requested by his client, but concluded they would be of no use in trial and did not order them transcribed and filed. That decision was characterized as an exercise of professional judgment and immune from a claim of malpractice. *See id*. at 934.

The record includes Mr. Woodall's unrefuted statements that he reviewed the trial transcript regarding the "prison garb" issue and, exercising his professional judgment, decided not to raise that issue, fearing it would detract from stronger arguments in Mr. Zonge's behalf. Because Mr. Woodall's decision was made in the exercise of his professional judgment as a matter of strategy, we are of the opinion that it is the type of decision which cannot form a basis for a malpractice action.

Even if the decision were not a strategic choice made in the exercise of professional judgment, Mr. Zonge would have to prove, through expert testimony, that the failure to brief the issue breached the applicable standard of care. As discussed above, Mr. Zonge has failed to provide any such testimony and has, therefore, failed to create any dispute of material fact to withstand the motion for summary judgment. Because the record also includes the Court of Criminal Appeals' decision rejecting the "prison garb" argument, it is possible in this case to conclude that the decision not to raise the issue did not fall below any standard of diligence.[5]

## B. Cause of Damages

As stated previously, one of the elements of legal malpractice is damages resulting from the attorney's neglect. *See Sammons*, 653 S.W.2d at 744. Mr. Zonge bore the burden of presenting sufficient evidence to raise an issue of disputed fact on that element. *See Stanley v. Joslin*, 757 S.W.2d 228, 330 (Tenn. Ct. App. 1998). Here, the gravamen of the complaint is that Mr. Zonge was damaged by Mr. Woodall's refusal to assert the "prison garb" defense in the appellate brief in Mr. Zonge's criminal case.[6] Assuming the damage suffered by Mr. Zonge to be his conviction and incarceration, he must demonstrate that the decision not to raise that defense resulted in the appellate court's affirmance of his conviction. This he has not and cannot do because of the facts of this case and because of the applicable law.

According to the Court of Criminal Appeals' opinion, after Mr. Woodall resigned from his representation of Mr. Zonge, the appellate brief Mr. Woodall filed was supplemented by Mr. Zonge's

---

[5]In most malpractice actions based on the attorney's failure to take some action, the court is unaware of what the outcome would have been had the action been taken. Here, however, the precise action Mr. Zonge complains was not taken by Mr. Woodall was later taken by another lawyer, and we are aware of the result.

[6]Mr. Zonge also asserts that "the heart of plaintiff's complaint is that the defendant did not brief the issue of testimony." Like the "prison garb" defense, this was an issue raised and rejected in the criminal appeal. Mr. Zonge argued that the trial court erred by excluding his testimony that he failed to show up for work because the roommate he attacked was sexually harasssing him and had arranged for him to stage the burglary and tie her and the former employer together to their bed. *See Zonge*, 973 S.W.2d at 257. The trial court excluded the testimony because Mr. Zonge's offer of proof was "without one scintilla of foundation." *Id.* The Court of Criminal Appeals determined that the trial court erred in limiting Mr. Zonge's testimony but that he had waived the issue at the hearing on his motion for new trial. *See id.* We note that this ground was not asserted in the complaint for malpractice herein, and we decline to address it here. *See Simpson v. Frontier Community Credit Union,* 810 S.W.2d 147, 153 (Tenn.1991) ("It is well-settled that issues not raised at trial cannot be raised for the first time on appeal."); *Chadwell v. Knox County,* Tennessee, 980 S.W.2d 378, 384 (Tenn.Ct.App.1998). Further, the analysis of the "prison garb" defense herein applies equally to this issue.

new counsel with the following argument: "that the trial court committed reversible error by forcing him [Mr. Zonge] to wear prison garb at his trial . . . " *Zonge*, 973 S.W.2d at 252 n.1. Because the "prison garb" defense was considered and rejected in the criminal appeal, Mr. Zonge's argument that the initial failure to raise the issue caused his conviction to be wrongfully affirmed defies logic. The fact that the Court of Criminal Appeals' actually considered the issue also precludes Mr. Zonge from factually establishing that counsel's decision not to raise the issue caused his conviction to be affirmed.

As a matter of law, recovery in a malpractice case requires the showing of a nexus between the alleged negligence and the injury alleged. Mr. Zonge had the burden of establishing at least a dispute of material fact as to any causal connection between the affirmance of his conviction and the conduct he alleges was negligent. The Court of Criminal Appeals described the "prison garb" issue thusly:

> In this case, the trial court concluded that had the defendant been diligent, he could have secured other clothes. We agree with the trial court's assessment. The defendant insisted on representing himself even though the trial court warned him about the perils involved in self-representation. The defendant arrived at trial unprepared to defend against the charges against him. He requested a continuance and complained that he had not had enough time to prepare his defense. It was only after the trial court denied his request for a continuance that the defendant objected to being tried in prison garb. In our view, the defendant's appearance at trial in prison garb is directly attributable to his lack of preparation.

*Zonge*, 973 S.W.2d at 257.

Having created the situation he later complained of, Mr. Zonge now asks us to believe that the appellate court's refusal to grant him a new trial was caused by his appellate counsel, who was necessarily limited by the record in the trial court. We are of the opinion that no reasonable person could conclude that the initial failure to raise the prison garb issue, especially in light of Mr. Zonge's actions in the trial court, wrongfully caused the affirmance of his conviction.

The Court of Criminal Appeals upheld Mr. Zonge's conviction on the basis of sufficiency of the evidence, including testimony of eyewitnesses who knew him, testimony of the investigating officer who found him being held by his victims immediately after the burglary and kidnapping, and Mr. Zonge's confession to various actions including breaking into the house to steal and ordering the roommate around while holding a gun. Thus, the cause of Mr. Zonge's continued incarceration appears to be his guilt, not any action by his appellate counsel.

Our disposition is strengthened by recent case law. We recently joined a majority of jurisdictions in holding that:

to state a claim for legal malpractice against private criminal defense counsel, the Plaintiff must assert a basis for claiming that the Plaintiff's conviction or sentence was caused by something other than the Plaintiff's own conduct. *See generally,* Gregory G. Sarno, Annotation, *Legal Malpractice in Defense of Criminal Prosecution*, 4 A.L.R. 5th 273-402 (1992). Specifically, the Plaintiff must plead that he or she has obtained appellate or post-conviction relief in order to overcome a motion for summary judgment or a motion to dismiss.

*Gibson v. Trant*, No. M1999-00390-COA-R3-CV, 2000 WL 320666 at *4 (Tenn. Ct. App. March 29, 2000) (no Tenn. R. App. P. 11 application filed). Without such an allegation, the key element of causation cannot be sustained. *See id.* As we noted in *Gibson*:

There is a good reason to place a greater burden on a guilty criminal defendant maintaining a claim of malpractice of the type involved in this case than is placed on a wronged civil defendant. The underpinnings of common law tort liability, compensation and deterrence, do not support a rule that allows recovery to one who is guilty of the underlying criminal charge. A person who is guilty need not be compensated for what happened to him as a result of his former attorney's negligence. There is no reason to compensate such a person, rewarding him indirectly for his crime. The possibility that a criminal defendant may not be guilty provides a sufficient, general deterrent against negligent conduct of defense counsel, without the need for providing tort remedy for guilty former criminal Defendants. Thus, in order to justify a right to recover, a Plaintiff asserting an error of the type [the plaintiff] asserts in this case must prove by a preponderance of the evidence, not only that the negligence of the attorney defendant caused him harm, but also that he is innocent of the crime charged.

*Id.* (quoting *Glenn v. Aiken*, 569 N.E.2d 784 (Mass.1991)). We find this reasoning compelling.[7]

In summary, we conclude that the trial court properly granted summary judgment because Mr. Zonge failed to provide any evidence from which a reasonable person could conclude that Mr. Woodall breached any applicable standard of care or that any actions by Mr. Woodall resulted in injury to Mr. Zonge. As a matter of law, Mr. Woodall was entitled to summary judgment.

---

[7]While this appeal was pending, Mr. Zonge filed a document styled a "Motion to Distinguish," in which he attempts to distinguish *Gibson.* We consider his Motion to be a supplemental brief, have reviewed his arguments, and find them unpersuasive.

## II.

Mr. Zonge framed an additional issue on appeal as follows:

The circuit court erred in granting summary judgment, since no cause of action for a legal malpractice claim had accrued against the defendant at the time the complaint was filed, the circuit court lacked jurisdiction of the subject matter.

Mr. Zonge argues that the trial court lacked jurisdiction over his case, and asks this court to declare the trial court's judgment void. Mr. Zonge maintains that because his cause of action did not accrue until the Supreme Court denied permission to appeal his conviction, he had no cognizable injury until that point, "which left the circuit court without jurisdiction to enter judgment."

As of the date of the filing of his complaint, neither the Court of Criminal Appeals nor the Supreme Court had ruled on Mr. Zonge's appeal of his criminal conviction. Because he was necessarily unable, therefore, to allege or show the causation of damage element of a malpractice cause of action, his lawsuit was subject to dismissal at that time. However, by the time the court rendered judgment, both the Court of Criminal Appeals and the Supreme Court had acted on his appeal.

For subject matter jurisdiction purposes, a circuit court "is a court of general jurisdiction, and the judge thereof shall administer right and justice according to law, in all cases where the jurisdiction is not conferred upon another tribunal." Tenn. Code Ann. § 16-10-101 (1994). The circuit courts of Tennessee have original jurisdiction so long as the jurisdiction has not been conveyed to another court. *See Staples v. Brown,* 113 Tenn. 639, 644, 85 S.W. 254, 255 (Tenn.1905). Having considered the record, we find the circuit court properly exercised jurisdiction over this action. The fact that Mr. Zonge was admittedly unable to allege or present evidence, at the time of filing, of all the elements of his case, i.e., that there was damage arising from the alleged malpractice, did not affect the circuit court's jurisdiction. A plaintiff's failure to state a claim for relief generally does not deprive a court of jurisdiction. Further, by staying the action pending rulings by the appellate courts, the trial court provided a procedural opportunity for the elements of the cause of action to accrue. The fact that the substance of those rulings eliminated an element necessary to a cause of action for malpractice in no way affects the trial court's jurisdiction.

## III.

Accordingly, we affirm the trial court's decision to grant Mr. Woodall's motion for summary judgment. Mr. Zonge's motion to distinguish is dismissed as moot. The costs of this appeal are to be taxed against Mr. Zonge, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE

-11-